**FLETCHER v. WECHSLER.**

Civ. No. 10217.

United States District Court
E. D. New York.
June 11, 1954.

Robert Goldstein, New York City, for plaintiff.

**104**

Nicholas Garofalo, Woodhaven, N. Y., for defendant.

GALSTON, District Judge.

This is a patent infringement suit involving two patents, one No. 2,145,169, granted January 24, 1939, and the other No. 2,459,692, granted January 18, 1949, on the alleged inventions of Milton Fletcher for an improvement in a support for neon tubes. The plaintiff also alleges a cause of action in unfair competition.

The complaint was filed almost five years ago, and the answer on October 6, 1949. It is not understood why this case should not have been reached for trial years ago. It certainly was not because of any lack in disposing of the court calendars. Then as late as March 23, 1954 the defendant filed a counterclaim.

At the trial plaintiff conceded that the defendant did not infringe the earlier patent.

Patent No. 2,459,692 recites that the invention relates to new and useful improvements in a support for neon tubes. The object of the invention was the construction of a support made from a single piece of metal sheet formed with a flat lug portion by which it may be fastened to a base; and there is provided a cylindrical portion associated with the lug portion and arranged to support the lower end of the glass rod, generally used to support neon tubes.

The patent more specifically proposes to form the cylindrical portion as a continuation from the flat lug portion, and to arrange the cylindrical portion with a split along the longitudinal side which is opposed to the lug portion. Furthermore the patentee contemplated constructing this split with projections formed with outwardly extending offset ends so that the projections could be gripped and pressed together "resiliently" to open the cylindrical portion a small amount to release the glass rod. There are two claims, both of which are alleged to have been infringed. It will

be sufficient to discuss Claim 1, which reads as follows:

"An article of the class described, comprising a clip of resilient material including a cylindrical portion formed along one side with a longitudinal split so that the cylindrical portion may be expanded to permit the insertion and removal of one end portion of a rod, said cylindrical portion being elliptical in cross-section, and a rod having an end portion engaged in said cylindrical portion, said end portion engaged within said cylindrical portion being formed with spaced circumferential grooves dividing said end portion into sections, one of said sections being offset laterally in one direction and the other being offset laterally in the opposite direction to combine to give said end portion an elliptical configuration conforming to the elliptical cross-sectional shape of said cylindrical portion, whereby said end portion of said rod is inserted into said cylindrical portion with the major axis of its elliptical formation parallel to the major axis of the elliptical cylindrical portion after which said rod is turned through ninety degrees to extend the major axis of the elliptical formation of said end portion parallel to the minor axis of the clyindrical portion to be more rigidly gripped by said cylindrical portion."

The defendant, in contesting validity, cited forty-nine prior patents. None of these was explained by any expert witness called by the defendant, and it might be said that not one of them is an anticipation of the claims of the patent in suit. The defendant seemed to rely on the file-wrapper and on the contention that in this day patents are subjected to most careful scrutiny by the courts, and patentees held to demonstrable invention before the courts will sustain validity. In sum, beyond offering these unexplained prior art patents, and asserting the rigidity of court decisions where the issue of invention was involved, the de-

fendant made no contribution at the trial of the case.

Perhaps the argument as to lack of invention gains most from a consideration of plaintiff's earlier patent No. 2,145,169. The plaintiff in his brief explains that he ascertained that there was difficulty with the earlier invention inasmuch as the tube support was perfectly round, and so the glassware, supporting the tube, would become loosened and would cause the neon tube to break.

To correct the defects in the earlier tube support, the plaintiff devised the support shown in the later patent. It seems to me that the critical question then in the case is whether the patentee's solution of the difficulty thus encountered in the earlier invention involved anything more than mechanical skill. The plaintiff's expert admitted that the essential difference between the earlier Fletcher patent and the patent in suit is that in the earlier patent the metal support "is truly circular and there are no projections". The projections referred to are designated 12 in the drawings. Baldly stated, if the round opening failed, was the change in form to a so-called elliptical opening, and the provision for the projections, invention?

During the time that the application was pending in the Patent Office, the examiner in one of his actions wrote:

"The cylindrical portions of Walker and Waterman (two of the prior art patents) are substantially elliptical. Whether the cylindrical portions of Walker or Waterman are elliptical or circular is a mere matter of shape which does not enter into the combination in a way to change its effect or result."

In the same action of the Patent Office rejecting other claims, the examiner observed that the cylindrical portions shown in the Walker and Waterman patents of the prior art are substantially elliptical, and added:

"To make the posts 20 of Walker and 13 of Waterman with elliptical portions would not be invention, but merely the carrying forward of an old idea taught by Wilson (another prior art reference) at cI, e and c."

Moreover, plaintiff's expert, Dr. Strange, admitted that as used in the claim and in the specification, the term "elliptical" did not have a mathematical connotation.

Dr. Strange was questioned concerning the following passage in Smalley patent No. 1,820,839 by the court:

"Adjustment may, therefore, readily be had by merely turning the post 2 clockwise or counter-clockwise, as described. The cooperative tightening effect which is obtained as described by turning the post 2 in a clockwise direction is enhanced favorably by having the transverse cross-section of the post 2 slightly elliptical so that the post acts to some extent as a pin."

I asked the witness whether that was not significant. Dr. Strange admitted it was, but that he did not find it anywhere in the Smalley claims.

"The Court: Well, it may not be in the claims. It would be an effective reference.

"The Witness: It would be. I admit it.

\* \* \* \* \* \*

"The Witness: I admit that this is the first time they had any mention of any post being plainly elliptical, though no claim is evidently made here for that feature.

"The Court: Well, the claim isn't important, as you know. It is the specification."

Later on the witness admitted that the purpose of the elliptical form shown in the Smalley patent was to secure the same sort of interlocking as is shown in the patent in suit.

The advantage of an elliptical post is disclosed also in the patent to Miller, No. 2,294,624, one of the prior art patents, issued September 1, 1942. The patent relates to an adjustable elevation post

and insulator construction. The patent recites:

> "It is also to be noted that the post P can swivel on the bracket B, and that the latter is readily adjustable laterally about the pivot provided by the eyelet 40. The adjustment also of the post P on the bracket is indicated in Figure 3 in dot and dash lines. From this figure it will be observed that the post can be swung completely about the bracket as a pivot."

The provision for spaced circumferential grooves referred to in the claims and specifications of the patent in suit are found in sufficiently similar form in the following patents: Miller, No. 2,294,624; Hyde, No. 1,838,181 (referred to as threads); Allison, No. 2,393,226; Miller, No. 2,343,691; Miller, No. 2,335,296; O'Keefe, No. 2,112,995 (referred to as notches); Bell, No. 2,067,818 (referred to as screws) to refer to some of the many prior art patents.

An element of the metal base concerns the form of the clip of resilient material designated, for example in Fig. 7, as 13a and 13b. These projecting portions may be pressed together so as slightly to open the tubular formation of the portion 12. This strikes me as being a mere mechanical expedient, and is sufficiently indicated in the prior art to destroy any claim of essential invention or novelty. See Covey patent, No. 1,814,831, the V-shaped recess 6; also patent to Hyde, No. 1,838,-181, projection 9 in the drawing; and patent to McMahan, No. 2,026,949, Fig. 1, referred to by the inventor as "projecting knubs 15". Projections are indicated in patent to Staaf, No. 1,792,611.

■ If it is argued that in none of these patents do we have exactly the projecting portions shown in the patent in suit, the answer is that there can be no invention in merely changing the form. Certainly it required no inventive genius, in dealing with what is referred to in the patent as resilient material, to conform the device to meeting the purpose described.

So that in the last analysis, if one compares the device of the earlier Fletcher patent with that of the later, under the most liberal conception of invention, validity would rest on the provision of these projections, and changing the cross-section of this metal holding device from "round" to something which the inventor called elliptical (but which, as Dr. Strange admitted, was merely in cross-section a "crushed circle").

■ If such authorities as Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, and Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 86 L. Ed. 58, do not make it possible to concede invention to the patent in suit, plaintiff's commercial success in the manufacture and sale, since the patent issued, of about 15 million of his neon tube supports might be considered as evidence of invention. However, commercial success weighs in the balance only when the matter of invention is doubtful. In the pending suit, as I have indicated, there is no such doubt. At most it may be conceded that the plaintiff effected a mechanical change over what the prior art disclosed.

As to infringement, if the patent were valid, there would be no difficulty in holding that the defendant infringes both claims of the patent.

■ Plaintiff's proof of unfair competition does not warrant relief to him in that alleged cause of action.

Defendant's counterclaim has placed the earlier patent in issue. The matter was not discussed by the plaintiff in his brief, for the allegation of infringement of the patent was withdrawn at the trial. In the circumstances, and on the showing made by the defendant, I hesitate to find that earlier patent invalid.

Findings of fact and conclusions of law in conformity with the foregoing opinion will be filed herewith.